UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
                                                      :
DAVID G. THORNE                                       :
                                                      :     CASE NO. 5:06-CV-872
            Petitioner,                               :
                                                      :
vs.                                                   :     OPINION & ORDER
                                                      :     [Resolving Doc. Nos. 1, 58 & 61.]
ERNEST MOORE                                          :
                                                      :
            Respondent.                               :
                                                      :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On April 13, 2006, Petitioner David G. Thorne filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Doc .1.] With his petition, Thorne seeks relief from the judgment and sentence that an Ohio state court imposed following his conviction on one count of aggravated murder in violation of O.R.C. § 2903.01 with a specification that Thorne conspired to commit the murder for hire in violation of O.R.C. § 2929.04(A)(2). [*Id.*] Respondent Ernest Moore opposes the petition. [Doc. 8.]

On June 30, 2009, Magistrate Judge George J. Limbert filed a Report and Recommendation that recommended the Court deny the Petitioner's writ, dismissing it in its entirety with prejudice. [Doc. 58.] The Petitioner objects to the Magistrate Judge's Report and Recommendation. [Doc. 61.] For the reasons provided below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Thorne's petition for a writ of habeas corpus.

**I. Background**

Case No. 5:06-CV-872
Gwin, J.

In this habeas action, Petitioner David G. Thorne challenges the constitutionality of his conviction by an Ohio state court under the Fifth, Sixth, and Fourteenth Amendments. The Petitioner claims that (1) during his trial, the State withheld evidence favorable to the defense; (2) his trial counsel was ineffective; and (3) he was denied a fair trial and due process of law.

On September 15, 1999, the Stark County grand jury returned an indictment charging Petitioner Thorne with one count of aggravated murder with a specification that the Petitioner conspired to commit the murder for hire. *See State v. Thorne*, No. 2000-CA-00067, 2000 WL 1732540, at *1 (Ohio Ct. App. Nov. 20, 2000). In particular, Thorne "was charged with hiring Joseph Wilkes to kill [Thorne's] ex-girlfriend, Yvonne Layne." *Id.* Layne was the mother of five children and Thorne was the father of Brandon, one of Layne's children. *See id.*

The charge arose from an incident that occurred on March 31, 1999. On this day, Wilkes killed Layne in her home. *See id.* Wilkes first "rented a room at the Comfort Inn at Carnation Mall in Alliance[, Ohio]. . . . He then purchased batting gloves and later a knife at the K Mart in the mall, walked to []Layne's residence, and committed the murder." *Id.* Subsequently, Wilkes "threw the knife in a storm sewer near the house, and disposed of his gloves in a McDonald's dumpster. The next morning, he claimed [that Thorne] [drove him from] the hotel . . . to a friend's house. []Wilkes hid his black nylon pants in the woods near [this] house." *Id.*

On the following day, April 1, 1999, "Tawnia Layne, the victim's mother, went to Yvonne Layne's home to take one of her grandchildren to school. When she arrived, Tawnia found her daughter's body. Yvonne's throat had been cut, and her body was lying in a pool of blood. Yvonne's five young children were awake in the house." *Id.* Layne's mother called the police, who discovered two partial bloody footprints at the scene, but little other physical evidence and no usable

Case No. 5:06-CV-872
Gwin, J.

fingerprints. *Id.* "Although a knife was recovered from a nearby storm sewer, the knife had been wiped clean." *Id.*

During their investigation of the case, "the police discovered that [Layne] had recently implemented paternity proceedings for her son, Brandon. As a result, [Thorne] was ordered to pay child support in the amount of $358 per month[,] with weekly payroll deductions beginning in March[]1999." *Id.* Thorne owed $700 in child support by the time he was scheduled to begin payments. *Id.*

The Alliance police identified Wilkes as a suspect in Layne's murder after Rose Mohr "contacted the police to tell them [that] she and her boyfriend, Chris Campbell, had spoken with [] Wilkes at the Carnation Mall in Alliance on the night of March 31, 1999. According to []Mohr, [] Wilkes told her and [] Campbell [that] he was in Alliance because he had been hired to kill a woman." *Id.* Additionally, Wilkes stated to them that "he had purchased a knife . . . and showed []Mohr and []Campbell the knife. []Mohr remembered []Wilkes saying [that] he was hired for money to commit the murder 'for a guy.'" *Id.* On the other hand, Campbell thought that Wilkes said that "his 'girlfriend' had paid for a room for him at the . . . Comfort Inn, [that] this girlfriend had dropped him off, and [that] the girlfriend had asked []Wilkes to commit the murder." *Id.*

In July 1999, Wilkes confessed to the murder and implicated Petitioner Thorne, claiming that Thorne paid Wilkes to kill Layne. *Id.* Wilkes explained how Thorne "planned the murder; provided an alibi for himself; provided []Wilkes with a place to stay before and after the murder; provided transportation to and from that location; and provided money to purchase the batting gloves and the knife used in the murder." *Id.* Wilkes also provided the motive for the murder, stating that Thorne "wanted custody of his son, Brandon, and did not want to pay child support to []Layne." *Id.*

-3-

Case No. 5:06-CV-872
Gwin, J.

Petitioner Thorne entered a plea of not guilty to the indictment. *See id.* On January 18, 2000, the Court of Common Pleas for Stark County, Ohio conducted a jury trial, which continued through January 23, 2000. *See id.* The jury found Thorne "guilty of aggravated murder and guilty of the specification [that Thorne] conspired to commit murder for hire." *Id.* On January 27, 2000, the trial court held a sentencing hearing, following which "the jury was unable to reach a verdict as to whether [Thorne] should die for his crime. The trial court declared a mistrial as to the penalty phase of the trial and proceeded to sentence [Thorne]." *Id.* On February 3, 2000, the "trial court sentenced [Thorne] to a term of life in prison without parole eligibility." *Id.*

Following the imposition of this judgement and sentence, Petitioner Thorne filed a motion for a new trial that the trial court denied. Thorne then appealed his sentence to the state court of appeals on August 3, 2000, raising the following assignments of error: (1) "the jury's verdict of guilty was not supported by the evidence, or[,] in the alternative[,] was against the manifest weight of the evidence," *id.* at *2; and (2) Thorne "was denied his constitutional right to effective assistance of counsel," *id.* On November 20, 2000, the state court of appeals denied the appeal and affirmed the trial court's judgment and sentence. *Id.* at *4. On January 4, 2001, Thorne sought leave to appeal to the Supreme Court of Ohio, setting out the same propositions of law as he had previously raised before the state court of appeals. On March 21, 2001, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question. [Doc. 8, Ex. 10.]

While directly appealing his judgment and sentence to the state appellate and supreme courts, Petitioner Thorne also sought other means of post-conviction relief. On November 13, 2000, before filing a direct appeal in the Supreme Court of Ohio, Thorne filed a post-conviction petition in the trial court; he subsequently amended this petition three times. On May 12, 2003, the trial court

Case No. 5:06-CV-872
Gwin, J.

conducted an evidentiary hearing on Thorne's post-conviction petition and it denied the petition on October 15, 2003. [Doc. 8, Ex. 19.]

Petitioner Thorne appealed the trial court's denial of his post-conviction petition to the state court of appeals on February 18, 2004, raising the following assignments of error: (1) the trial court erred in failing to grant post-conviction relief to Thorne based upon the state's failure to disclose exculpatory evidence; (2) the trial court erred in failing to grant post-conviction relief to Thorne based upon the recantation of the former testimony of the state's primary witness; (3) the trial court erred in failing to grant post-conviction relief to Thorne based upon inadequate representation of counsel; and (4) the trial court erred in failing to grant post-conviction relief to Thorne based upon prosecutorial misconduct. [Doc. 8, Ex. 20.]  On December 15, 2004, the state court of appeals affirmed the trial court's denial of Thorne's post-conviction petition. [Doc. 8, Ex. 22.]

Thorne then filed an appeal with the Supreme Court of Ohio, setting out the following propositions of law: (1) the trial court erred in failing to grant Thorne a new trial based on the state's failure to disclose exculpatory and/or impeachment evidence favorable to the defense in violation of *Brady v. Maryland*; (2) the trial court erred to the prejudice of Thorne by failing to grant a new trial based upon the recantation of the testimony of the state's primary witness; (3) the trial court erred to the prejudice of Thorne by failing to grant a new trial based on ineffective assistance of counsel; and (4) the trial court erred to the prejudice of Thorne by failing to grant a new trial based upon the misconduct of the prosecuting attorney. [Doc. 8, Ex. 23.] On April 23, 2005, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question. [Doc. 8, Ex. 25.]

On April 13, 2006, Petitioner Thorne filed a petition for a writ of habeas corpus pursuant to

Case No. 5:06-CV-872
Gwin, J.

28 U.S.C. § 2254. [Doc .1.] With his petition, Thorne raises the following five grounds for relief:

> (1) The Petitioner was denied his right to a fair trial and due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution when the state withheld evidence favorable to the defense;
>
> (2) The Petitioner was denied the effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution;
>
> (3) The Petitioner was not afforded the due process of law and was denied a fair trial, as guaranteed to him through the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution;
>
> (4) The Petitioner was denied his rights to a fair trial and to due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States of America, when the prosecutor engaged in improper argument and other misconduct; and
>
> (5) The cumulative effect of trial error violated Thorne's rights to due process and a fair trial.

[*See id.*]

After Respondent Warden Ernest Moore filed a Return of Writ on June 27, 2006, [Doc. 8], Magistrate Judge George J. Limbert issued a Report and Recommendation, in which he recommended that Petitioner Thorne's habeas petition be denied. [Doc. 58.] The Petitioner objects to the Magistrate Judge's Report and Recommendation. [Doc. 61.] The Court considers the Petitioner's objection below.

## II. Legal Standard

*A. Federal Magistrates Act*

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of a Report and Recommendation to which an objection has been made. *See* 28 U.S.C. § 636(b)(1). As noted in Magistrate White's Report and Recommendation, any objections

Case No. 5:06-CV-872
Gwin, J.

must be filed with the Clerk of Court within ten days of the report's issuance. Parties waive their right to appeal the Magistrate Judge's Recommendation if they fail to object within the time allotted. *See id.*

*B. The Antiterrorism and Effective Death Penalty Act*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), governs collateral attacks on state court decisions. The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Miller v. Francis,* 269 F.3d 609, 614 (6th Cir. 2001).

The United States Supreme Court outlined the proper application of § 2254(d) in *Williams v. Taylor,* 529 U.S. 362 (2000). To justify a grant of habeas relief under the "contrary to" clause, "a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision." *Miller,* 269 F.3d at 614 (quoting *Williams,* 529 U.S. at 412) (internal quotations omitted). A federal habeas court may grant the writ "under the 'unreasonable application' clause . . . if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413 (citations omitted). The Sixth Circuit holds that, even if a federal court determines that a state court incorrectly applied federal law, the federal court still cannot grant habeas relief unless it also finds that the state court ruling was unreasonable.

-7-

Case No. 5:06-CV-872
Gwin, J.

Simpson v. Jones, 238 F.3d 399, 405 (6th Cir. 2000).

*C. Ineffective Assistance of Counsel*

To prevail on a habeas claim that counsel's assistance was constitutionally ineffective, a movant must satisfy a two-pronged test. First, he must show that counsel's performance was deficient by demonstrating that "counsel made errors so serious that he was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In evaluating this charge, the court must determine whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . [, keeping in mind] that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id*. at 690. Judicial scrutiny of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See id.* at 689.

Second, the movant must show that counsel's deficient performance prejudiced the defendant by demonstrating that "counsel's errors were so serious as to deprive the defendant of a fair trial . . . ." *Id*. at 687. A habeas petitioner meets the second prong of the test by establishing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id*. at 697.

### III. Analysis

*A. First Ground for Relief*: *Withholding of Evidence Favorable to the Defense (*Brady *Violation)*

Case No. 5:06-CV-872
Gwin, J.

Petitioner Thorne – in his first ground for relief – argues that he is entitled to federal habeas relief because the state allegedly withheld (1) statements of witnesses who could have undermined the credibility of Wilkes's confession and testimony; (2) evidence that would have enabled the defense to challenge the thoroughness and reliability of the police investigation; and (3) evidence that would have enabled the defense to effectively impeach the prosecution's witnesses.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Subsequently, the Court eliminated the requirement for a defendant to request favorable information and stated that the constitutional duty to disclose is "triggered by the potential impact of favorable but undisclosed evidence. . . ." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *see also United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976).

To prevail on a *Brady* claim in habeas, a petitioner must demonstrate that the state withheld evidence from the defense at trial that was both material and favorable. *Kyles*, 514 U.S. at 432; *Brady*, 373 U.S. at 87. Evidence is "material" for *Brady* purposes "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433 (internal quotation omitted). The *Kyles* Court stressed that, in assessing materiality, suppressed evidence must be considered collectively, not item by item. *Kyles,* 514 U.S. at 436. "Favorable" evidence under *Brady* is exculpatory evidence including impeachment material. *Bagley*, 473 U.S. at 676. In fact, inculpatory evidence may be considered *Brady* material if it may be used to impeach a witness. *Strickler v. Greene*, 527 U.S. 263, 21 (1999).

-9-

Case No. 5:06-CV-872
Gwin, J.

In this case, even if the *Brady* material that was purportedly withheld from the defense (taken as a whole) had not been disclosed, such a disclosure does not establish a reasonable probability of a different outcome at trial.  The physical evidence corroborating Wilkes's testimony, in which he admitted to murdering Layne and implicated Petitioner Thorne in the murder, is overwhelming.  Further, testimony from several other witnesses including Campbell and Mohr supported Wilkes's testimony.

Seeking to establish a *Brady* violation, the Petitioner points to Wilkes's recantation of his testimony, the possibility that other people were in Layne's home before or after the murder, the possibility that police considered other suspects, and the propriety of Wilkes's interrogation.  All of this evidence, when considered together, fails to overcome the fact that Wilkes was able to direct police to a knife that was consistent with the murder weapon and to pants that were consistent with pants that witnesses Mohr and Campbell had seen him wear the night of the murder.  Additionally, the allegedly withheld evidence, when considered together, fails to overcome the testimony of Karen Enoch, who owned the house where Wilkes was living, that Wilkes's whereabouts were unaccounted for on the night of the murder, that he expected payment from the Petitioner following the murder, and that he bought new shoes, roller blades, and work boots after meeting with the Petitioner following the murder.  There are also reasonable explanations for any minor discrepancies between Wilkes's testimony and what actually transpired during the murder, including the excitement of the situation, Wilkes's earlier drug use, and his incentive to avoid the death penalty.

Consequently, the Court finds that Petitioner Thorne has failed to demonstrate that the allegedly withheld evidence is material for *Brady* purposes and it therefore denies Thorne's first ground for habeas relief.

Case No. 5:06-CV-872
Gwin, J.

*B. Second Ground for Relief: Ineffective Assistance of Counsel*

In his second ground for habeas relief, Petitioner Thorne asserts that his trial counsel failed to provide effective assistance when he allegedly (1) failed to conduct any investigation into the case in order to prepare an adequate defense; and (2) failed to obtain a forensic expert to examine the blood patterns left at the scene.

To prevail on a habeas petition involving a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that his counsel was deficient; and (2) that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687.

In this case, Petitioner Thorne cannot satisfy the *Strickland* standard with respect to both errors allegedly committed by his counsel. Regarding Thorne's claim that his trial counsel was ineffective because he failed to contact potential witnesses and to obtain other beneficial evidence, Thorne cannot satisfy the first prong of the *Strickland* standard because he cannot show that his attorney breached his "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," particularly in view of the fact that a "heavy measure of deference" must be accorded "to counsel's judgments." *Strickland,* 466 U.S. at 691.

Moreover, Thorne not only fails to identify the potential witnesses that his counsel neglected to contact, but also he fails to provide affidavits from these individuals demonstrating that they would have appeared to testify in court and that their testimony would have been favorable to Thorne. Thus, Thorne has not demonstrated how his counsel's alleged failure to call these witnesses constitutes deficient performance or that the outcome at trial would have been different had these witnesses testified, as required by *Strickland*. Thorne also cannot satisfy the *Strickland* standard with respect to his claim that his trial attorney failed to interview the state's main expert or to request

Case No. 5:06-CV-872
Gwin, J.

forensic testing of certain evidentiary items because Thorne has not shown why these alleged failures constitute deficient performance or how the outcome of the trial would have been different if the trial attorney had taken these actions.

The Court also finds that Petitioner Thorne cannot satisfy the *Strickland* standard in connection with his allegation that his counsel was ineffective because he neglected to hire a forensic expert. The Sixth Circuit has held that the failure to hire a forensic expert does not constitute ineffective assistance of counsel when subjecting the prosecution's expert [and other witnesses] to cross-examination would be sufficient. *Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005). Moreover, the Sixth Circuit noted that in such "failure to hire" cases, petitioners must also establish prejudice arising from the "modest difference between the jury hearing [the defense's theory] through cross-examination and hearing it through the mouth of another expert." *Id*.

In this case, the prosecution did not hire its own expert and it relied primarily on Wilkes's testimony, particularly his confession that he committed the crime and his statement that Petitioner Thorne had hired Wikes for this purpose. The prosecution also produced evidence corroborating the confession, including the testimony of several other witnesses and criminal tools such as the murder weapon and Wilkes's clothing (to which Wilkes had led police). Thus, at most, a forensic expert could help to determine the exact manner in which Layne was killed, but she would not aid Thorne in demonstrating that another individual had killed Layne in the face of the overwhelming evidence to the contrary. Because hiring a forensic expert in this case did not constitute deficient performance – the prosecution did not hire an expert and the Petitioner had the benefit of cross-examining the state's witnesses – and because the Petitioner has not shown that the outcome of the trial would be different had his counsel hired a forensic expert, the Court finds that the Petitioner's counsel was not

-12-

Case No. 5:06-CV-872
Gwin, J.

ineffective under *Strickland*.  The Court thus denies Petitioner Thorne's second ground for relief.

*C. Third Ground for Relief: Due Process Violation; Presenting False Evidence*

In his third ground for habeas relief, Petitioner Thorne argues that his due process rights were violated because the prosecution introduced evidence that it knew or should have known to be false – Wilkes's confession.

The Supreme Court has held that "to obtain a conviction by the use of testimony known by the prosecution to be perjured offends due process." *Jacobs v. Scott*, 513 U.S. 1067, 115 S.Ct. 711, 712 (1995) (citing *Mooney v. Holohan*, 294 U.S. 103, 112-113 (1935)).  A due process violation does not occur merely because testimony is recanted.  *See Hysler v. Florida*, 315 U.S. 411, 413 (1942).  To establish a due process violation based upon the introduction of false testimony, Petitioner Thorne must demonstrate that (1) Wilkes's testimony was false; (2) the prosecution knew it was false; and (3) the testimony was material.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000).  In establishing falsity, Thorne "must show that the statement in question was 'indisputably false,' rather than merely misleading." *Byrd*, 209 F.3d at 517-18 (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).

In this case, it is clear that Wilkes's testimony was material.  It is not at all clear that Wilkes's testimony was false or that the prosecution knew it was false.  First, Petitioner Thorne has not established that Wilkes was not telling the truth at trial.  To the contrary, ample other evidence and testimony corroborated Wilkes's confession and testimony.  The state court of appeals also considered Wilkes's recantation of his testimony and upheld the trial court's denial of Thorne's motion for a new trial, finding Wilkes's recantation to be incredible and determining that there was significant evidence supporting the conclusion that Wilkes committed the crime.  *See State v.*

-13-

Case No. 5:06-CV-872
Gwin, J.

*Thorne*, No. 2003-CA-00388, 2004 WL 2980359, ¶ 36-39 (Ohio Ct. App. Dec. 16, 2004). Based on this finding, the Petitioner has failed to establish that Wilkes's trial testimony was indisputably false, and, necessarily, that the prosecution knew that this evidence was false. As a result, the Court denies the Petitioner's third ground for habeas relief.

*D. Fourth Ground for Relief: Due Process Violation; Prosecutorial Misconduct*

Petitioner Thorne has withdrawn his fourth ground for relief, and the Court therefore denies to grant him relief with respect to this claim. [Doc. 48 at 44.]

*E. Fifth Ground for Relief: Due Process Violation; Cumulative Error*

In his fifth and final ground for relief, Petitioner Thorne claims that the cumulative effect of trial errors violated his right to due process and to a fair trial.

Claims of cumulative error are not cognizable grounds for habeas relief. *Millender v. Adams*, 376 F.3d 520, 529 (6th Cir. 2004). The Sixth Circuit has stated that "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Id*. (*Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)). Indeed, the *Lorraine* court held that a district court "overstepped its bounds on habeas review" by ruling that the cumulative weight of prosecutorial misconduct and ineffective counsel warranted habeas relief. *Lorraine*, 291 F.3d at 447. Moreover, as the Court noted above, the alleged errors do not cumulatively amount to a constitutional violation because there was significant evidence corroborating Wilkes's testimony at trial. Accordingly, the Court declines to grant relief to Petitioner Thorne on his fifth ground for relief.

### IV. Conclusion

For the reasons stated above, the Court **ADOPTS** the Report and Recommendation of Magistrate Judge Limbert and **DENIES** Petitioner David G. Thorne's petition for a writ of habeas

Case No. 5:06-CV-872
Gwin, J.

corpus pursuant to 28 U.S.C. § 2254. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could be taken in good faith, and the Court hereby issues a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed. R. App. 22(b) as to the first and second grounds for relief.

      IT IS SO ORDERED.


Dated: July 31, 2009            s/ *James S. Gwin*
                                                      JAMES S. GWIN
                                                      UNITED STATES DISTRICT JUDGE